Harold D. Pitts appeals from an order of the Cullman Circuit Court requiring him to pay Donna Gangi $67,318.43, plus other lawful charges for improvements and taxes, in order to redeem his property. We affirm.
On October 14, 1999, Pitts gave a mortgage on real property he owned to Phoenix Funding; Phoenix Funding assigned that mortgage to Bank One National Association ("Bank One").[1] Bank One foreclosed on Pitts's property and on May 22, 2001, held a foreclosure sale. At the sale, Bank One bid the amount of debt owed on the mortgage: $382,318.43. Bank One also secured insurance on the property. Shortly after the foreclosure sale, the residence on the property was destroyed by fire. Bank One collected insurance proceeds in the amount of $315,000 for the fire loss. On January 23, 2002, Bank One conveyed the property by statutory warranty deed to Donna Gangi for the sum of $8,500.
On February 15, 2002, Pitts gave notice to Gangi of his intent to redeem the property under Ala. Code 1975, § 6-5-248. On May 10, 2002, within the one-year time frame allowed by Ala. Code 1975, §6-5-248(b), Pitts filed his complaint to redeem the property. Gangi responded that Pitts had failed to pay the "purchase price paid at the sale," as she stated was required by Ala. Code 1975, §6-5-253(a). Gangi contended that the "purchase price paid at the sale" was the sum Bank One paid at the foreclosure sale, minus the amount it had received in insurance proceeds resulting from the destruction of the residence on the property.[2] Pitts argued that he owed Gangi no more than $8,500 — the amount she paid Bank One for the property. The trial court held that Pitts owed Gangi $67,318.43, the difference between the amount Bank One paid at the foreclosure sale and the insurance proceeds it received after the residence on the property was destroyed. It stated, "[T]he interpretation of the appellate courts in this matter is clear. The purchase price to be paid is the purchase price paid at the foreclosure sale less any funds received as the result of the destruction of the house on the property." Pitts appealed.
 Standard of Review
We review questions of statutory construction and interpretation de novo, giving no deference to the trial court's conclusions. Greene v. Thompson, 554 So.2d 376 (Ala. 1989).
 Analysis
This appeal concerns the amount Pitts owes Gangi as the "purchase price paid at the sale." Pitts contends that he owes $8,500 — the price Gangi paid Bank One for the property — plus other lawful charges for improvements to and taxes on the property. Gangi contends that Pitts owes her $67,318.43 — the price paid by Bank One at the foreclosure sale less the amount it received in insurance proceeds — plus other lawful charges for improvements and taxes. *Page 435 
This case must be resolved by statutory interpretation of Ala. Code 1975, § 6-5-253(a): "Anyone entitled and desiring to redeem real estate under the provisions of this article [art. 14, ch. 5, Title 6] must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale. . . ."[3] *Page 436 
Section 6-5-247(1), defines the term "sale" as "[a]ny execution, judgment, or foreclosure sale."
In DeKalb County LP Gas Co. v. Suburban Gas, Inc.,729 So.2d 270, 275 (Ala. 1998), this Court stated:
 "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'"
(Quoting Blue Cross Blue Shield v. Nielsen, 714 So.2d 293,296 (Ala. 1998), quoting in turn IMED Corp. v. Systems Eng'gAssocs. Corp., 602 So.2d 344, 346 (Ala. 1992)). Further, this Court made clear that "only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent." DeKalb, 729 So.2d at 276 (emphasis added).
There is clearly a "rational" way to view the words of the Legislature. It may not reflect a policy that the members of this Court would adopt, but that is an entirely different matter. If the Legislature intends this statute to be applied in a different manner, the Legislature may correct the statute in its own way and its own time.
Because both the plain meaning and the existing precedent governing this statute lead us to conclude that Pitts must pay Gangi the purchase price paid by Bank One at the foreclosure sale (less the amount Bank One received in insurance proceeds), we hold that the trial court did not err in requiring Pitts to pay Gangi the sum of $67,318.43 to redeem his property, in addition to other charges imposed by the trial court.
AFFIRMED.
NABERS, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.
[1] Bank One is not a party to this action.
[2] Bank One paid $382,318.43 for the property; if the $315,000 received in insurance proceeds is subtracted from that amount, the result is $67,318.43.
[3] The parties base their arguments on two prior cases and the statutory language existing at the time each of those cases was decided by this Court.
Since 1852, the Alabama Code has prescribed the price that must be paid by a party seeking to redeem his property. The statute originally stated:
 "The debtor must also pay, or tender to the purchaser, or his vendee, the purchase money."
Ala. Code 1852, § 2118.
The statute was changed slightly, and by the time the Code of Alabama 1923 was enacted, the statute read, in pertinent part:
 "Any one entitled and desiring to redeem real estate under the provisions of this chapter must also pay or tender to the purchaser or his vendee the purchase money. . . ."
Ala. Code 1923, § 10145.
The statute also contained the following provision:
 "If the redemption is made from a person who at the time of redemption owned the debt for which the property was sold, he must also pay any balance due on the debt. . . ."
Ala. Code 1923, § 10145.4.
Estes v. Johnson, 234 Ala. 191, 174 So. 632 (1937), was decided under § 10145.4, Ala. Code 1923. In that case, a bank had purchased land at a foreclosure sale, bidding an amount less than the entire debt owed by the defaulting party. The bank then sold the property to the defendants for an unknown price. The plaintiff filed a bill to redeem the property, seeking to payonly the price paid at the foreclosure sale, as opposed to the full amount of the debt owed on the property. The issue presented to this Court was whether the party seeking to redeem the property ("the redemptioner") owed the full amount owed on the debt. This Court stated that under § 10145.4 the redemptioner did not owe the balance of the mortgage debt because there was no evidence that the mortgagee bank had transferred that debt to the defendant. Estes, 234 Ala. at 192, 174 So. at 633. The redemptioner was allowed to redeem by paying the amount the defendant had paid to the mortgagee bank when the defendant purchased the property. Estes, 234 Ala. at 192, 174 So. at 633.
In 1940, Alabama's laws were recodified. What had been § 10145 in the 1923 Code became § 732 in the 1940 Code. The two sections are identical.
Dicie v. Morris, 285 Ala. 650, 235 So.2d 796 (1970), was decided under the 1940 Code. A mortgagee had purchased property at a foreclosure sale, bidding the entire amount of the debt, which was $9,664.36. The mortgagee then sold that property to the defendant for the sum of $4,500. The redemptioner sought to redeem the property from the defendant. He argued that he owed the defendant $4,500, the sum paid by the defendant to the mortgagee.
We held, in a somewhat confusing interpretation of Estes, that the mortgagee did not transfer or assign to the defendant the balance of the unpaid debt and that, therefore, the redemptioner did not have to pay the entire debt to redeem the property. We wrote:
 "[T]he Estes case, supra, recognized that the grantee had the right to demand the amount of the purchase money bid at foreclosure, and by doing so, furnishes authority here for holding that the amount bid at foreclosure by the mortgagee-purchaser, constitutes the purchase money referred to in [§ 732]."
Dicie, 285 Ala. at 653, 235 So.2d at 798.
In Dicie, the mortgage debt was extinguished by the amount of the foreclosure bid.
On January 1, 1989, Article 14 governing redemption of real estate was repealed; it was replaced with Article 14A, which modified the law governing this subject.
Concerning the statutory provision we are examining, two changes are worth noting. First, the Legislature added a new section defining certain terms. Ala. Code 1975, § 6-5-247(1) defines the term "sale" as "[a]ny execution, judgment, or foreclosure sale." Second, the statute itself, now codified as Ala. Code 1975, § 6-5-253(a), provides, in pertinent part:
 "Anyone entitled and desiring to redeem real estate under the provision of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale. . . ."
If these statutes are read together, it is clear that the Legislature, in enacting § 6-5-247(1) and § 6-5-253(a), has adopted the holding in Dicie v. Morris: whoever desires to redeem his property must pay the price paid by the purchaser "at the [foreclosure] sale."